216 P.3d 1220 (2009)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of J.R., Juvenile-Appellant.
No. 08CA1709.
Colorado Court of Appeals, Div. III.
August 6, 2009.
*1221 John W. Suthers, Attorney General, Elizabeth Rohrbough, Senior Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee.
Douglas K. Wilson, Colorado State Public Defender, Joni E. Speirs, Deputy State Public Defender, Denver, Colorado, for Juvenile-Appellant.
Opinion by Judge NEY.[*]
J.R., a juvenile, appeals the judgment of delinquency entered on the trial court's finding that he committed acts which, if committed by an adult, would constitute the offense of sexual assault. J.R. also appeals the court's refusal to apply presentence confinement credit against his sentence. We affirm the judgment of conviction, vacate the sentence, and remand for resentencing.

I.
J.R. first argues that the evidence is insufficient to support the trial court's findings of guilt. We disagree.
When reviewing the sufficiency of the evidence supporting an adjudication of juvenile delinquency, the standards are the same as those used in a criminal case. The reviewing court must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. People in Interest of J.P.L., 49 P.3d 1209, 1210 (Colo.App.2002).
As relevant here:
(1) Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits sexual assault if:
...
(b) The actor knows that the victim is incapable of appraising the nature of the victim's conduct; or
...

*1222 (h) The victim is physically helpless and the actor knows the victim is physically helpless and the victim has not consented.
§ 18-3-402, C.R.S.2008.
Here, it was undisputed that the victim (a female student who attended the same school as J.R.) became extremely intoxicated while at a party with J.R. The trial court found that J.R. accompanied the victim to a private room where he had sexual intercourse with her even though he knew that she was too intoxicated to appraise the nature of her conduct, or to consent. Although the court acknowledged that the victim's recollection of what transpired was incomplete due to her semiconscious state during the assault, the court credited her testimony describing the pain she experienced in her vaginal area after her pants and underwear were removed. In addition, the court relied on the testimony of (1) a nurse who examined the victim soon after the assault and observed vaginal tearing and bruising consistent with recent intercourse; and (2) a third student to whom J.R. had said, "[Y]ou're next," as J.R. was leaving the area where the assault occurred (the third student testified that he interpreted this statement as an invitation for him to have sexual intercourse with the inebriated victim).
Based on these findings, the court concluded that the prosecution had proved, beyond a reasonable doubt, that J.R. violated section 18-3-402(1)(b) and (1)(h). The court then merged the two adjudications and entered a single judgment based on the violation of the former provision.
We conclude the evidence cited by the trial court supports its factual findings and judgment, notwithstanding J.R.'s emphasis of his self-exculpatory testimony and other evidence favorable to the defense. See People v. Stark, 691 P.2d 334, 339 (Colo.1984) (as the trier of fact in a bench trial, the trial judge has responsibility for resolving conflicts in evidence, and an appellate court will not substitute its judgment as to weight of evidence or credibility of witnesses for that of trial judge).

II.
J.R. next argues that, because the trial court did not conduct a timely sentencing proceeding within forty-five days of the date it adjudicated him delinquent, the court erred by refusing to apply presentence confinement credit against his sentence. We agree in part.
Juvenile sentencing proceedings are subject to a clear statutory deadline. Section 19-2-804(3), C.R.S.2008, provides: "If the juvenile is found guilty after an adjudicatory trial, the court may proceed to sentencing or direct that the matter be set for a separate sentencing hearing within forty-five days following completion of the adjudicatory trial." Similarly, section 19-2-906(3)(a), C.R.S.2008, provides: "The court may continue the sentencing hearing, either on its own motion or on the motion of any interested party, for a reasonable period to receive reports or other evidence; except that the court shall determine sentencing within forty-five days following completion of the adjudicatory trial." (Emphasis added.)

A. Procedural History
Here, J.R. was taken into custody on September 24, 2007. When he appeared in court the next day, the court ordered that he be held without bond.
J.R. remained in custody at a youth detention facility through the date of trial, January 23, 2008. At the conclusion of the one-day trial, the court found J.R. guilty, scheduled a sentencing hearing for February 28, 2008, and remanded him to the youth detention facility.
On January 28, 2008, J.R. turned eighteen. On that same day, he was transferred to a county jail.
On February 28, 2008, the trial court rescheduled the sentencing hearing to April 17, 2008, based on a finding that the probation department's inability to complete a presentence investigation and an offense specific mental health evaluation constituted "good *1223 cause" to waive the forty-five-day statutory deadline for sentencing. J.R. remained in custody.
On April 17, 2008, the trial court rescheduled the sentencing hearing to April 24, 2008, because the victim was not present and the offense specific evaluation had not yet been completed. On April 24, 2008, the trial court again rescheduled the sentencing hearing because the offense specific evaluation still had not been submitted. J.R. remained in custody throughout this time.
At sentencing on June 5, 2008, J.R. asked the court to grant him 255 days of presentence confinement credit. The trial court denied the request and imposed a sentence of two years in the custody of the Department of Human Services (DHS), explaining that this maximum-length sentence would give the DHS the "greatest opportunity" to rehabilitate J.R. See § 19-2-909(1)(a), C.R.S.2008 (establishing two years in the custody of the DHS as the maximum sentence for a juvenile delinquent, subject to an exception not applicable here); § 19-2-910, C.R.S.2008 (a person who is eighteen or older, but less than twenty-one years of age, may be sentenced to the DHS for commission of a delinquent act committed before he or she turned eighteen).

B. Analysis
The plain language of section 19-2-906(3)(a), which commands that the court "shall determine sentencing within forty-five days following completion of the adjudicatory trial" (emphasis added), does not allow for any extensions beyond the forty-five-day deadline. See People v. Dist. Court, 713 P.2d 918, 921 (Colo.1986) (a court's task in construing a statute is to ascertain and give effect to the intent of the General Assembly; to determine that intent, we look first to the plain and ordinary meaning of the statutory language); People v. Steinbeck, 186 P.3d 54, 57 (Colo.App.2007) ("`Shall' is a mandatory word that creates an obligation."). Further, the parties do not direct our attention to any other statutory provision that allows for such extensions.
Although the General Assembly could not have been more clear in establishing the forty-five-day deadline for juvenile sentencing, it did not prescribe a remedy for a violation of this deadline. This omission allows for four possible conclusions.
First, the mandatory deadline language could be construed to be meaningless. However, such a determination would violate a core maxim of statutory construction. See Mayo v. People 181 P.3d 1207, 1210 (Colo. App.2008) (courts should give effect to all parts of a statute and avoid constructions that would render a part of the statute meaningless).
Second, the mandatory deadline language could be construed as resulting in a divestiture of jurisdiction on the forty-sixth day. However, this would produce an absurd result that is clearly contrary to the objectives of the juvenile justice system. See § 19-2-102(1), C.R.S.2008 ("The general assembly... finds that, while holding paramount the public safety, the juvenile justice system shall take into consideration the best interests of the juvenile, the victim, and the community in providing appropriate treatment to reduce the rate of recidivism in the juvenile justice system and to assist the juvenile in becoming a productive member of society."); Bostelman v. People, 162 P.3d 686, 691 (Colo. 2007) ("The juvenile justice system is primarily designed to provide guidance, rehabilitation, and restoration for the juvenile and the protection of society, rather than adjudicating criminal conduct and sanctioning criminal responsibility, guilt, and punishment."). Hence, such a construction also would violate a well-established rule of statutory construction. See People v. Haghshenas, 31 P.3d 180, 182 (Colo.App.2001) ("we must be mindful of the effects of our interpretation and should avoid statutory constructions that lead to absurd results"); see also People v. Wortham, 928 P.2d 771, 774 (Colo.App.1996) (although trial court's noncompliance with mandatory deadlines in special sentencing statute deprived court of authority to impose sentence pursuant to that statute, the noncompliance did not result in a divestiture of jurisdiction).
*1224 Third, the "shall" provision of section 19-2-906(3)(a) could be interpreted as mere directory language. Compare People v. Heimann, 186 P.3d 77, 79 (Colo.App.2007) (provision specifying that a court "shall" conduct resentencing within five days of finding a probation violation was directory), with People v. Wortham, 928 P.2d at 774 (concluding that language in special sentencing statute that prohibited the court from enlarging the relevant time period was mandatory, and not directory). However, statutory provisions requiring a court to make a decision within a specified time should not be construed as directory where "time is of the essence," People v. Heimann, 186 P.3d at 79, and here the General Assembly has established rehabilitative goals (described above) that are necessarily time-sensitive because they relate to juvenile maturation.
The final option is to read the mandatory sentencing deadline provisions as establishing the latest possible date from which a juvenile offender's sentence must begin to run following an adjudicatory trial. This construction gives meaning to the plain language of the statutes, is consistent with the General Assembly's stated objectives for the juvenile justice system, and, as explained below, permits a court to reasonably remedy a violation of the deadline by applying presentence confinement credit against the juvenile's sentence. See § 2-4-201(1), C.R.S. 2008 (presumption that, in enacting a statute, the General Assembly intends a just and reasonable result that is feasible of execution).
In general, the decision whether to apply presentence confinement credit against a juvenile's sentence is a matter of trial court discretion, "subject to an ad hoc assessment of the needs of the child and the interests of society." People in Interest of T.S.R., 843 P.2d 105, 107 (Colo.App.1992) (because an adult criminal defendant's right to presentence confinement credit derives from statute, and because there is no corollary provision applicable to juvenile delinquents, a juvenile delinquent has neither a constitutional nor a statutory right to credit for "preadjudicatory detention"); see § 18-1.3-405, C.R.S.2008 (adult criminal defendants are entitled to credit for all presentence confinement). Thus, where a court conducts a timely juvenile sentencing hearing, its decision not to grant presentence confinement credit for time the juvenile has spent in custody after being found guilty at trial cannot cause the aggregate length of the juvenile's post-trial confinement to exceed the maximum period authorized by the General Assembly. T.S.R., 843 P.2d at 107 (juvenile sentenced twenty-eight days after he was found guilty at trial). This is true, even if the trial court imposes the maximum sentence of confinement authorized by statute, because the General Assembly explicitly contemplated the possibility that juveniles would be confined for up to forty-five days following trial (and it did not specify that presentence confinement credit must be awarded for this period). Accordingly, consistent with T.S.R., we conclude the decision whether to award credit for confinement preceding the expiration of the forty-five-day post-trial deadline is a matter of trial court discretion, and we perceive no abuse of discretion here in the trial court's decision not to grant J.R. credit for the time he spent in custody prior to the expiration of the forty-five-day deadline on March 9, 2008. See T.S.R., 843 P.2d at 107 (finding no abuse of discretion in the trial court's decision not to award presentence confinement credit for the 311 days that juvenile spent in custody from the date of his arrest through the date he was found guilty at trial where the trial court's decision was motivated by a desire to afford juvenile the longest possible period of rehabilitative treatment).
However, in this case the trial court did not conduct a sentencing hearing until eighty-eight days after the expiration of the forty-five-day mandatory deadline established by sections 19-2-804(3) and 19-2-906(3)(a), and the court imposed the maximum two-year sentence of DHS confinement authorized by statute. Therefore, we conclude that, because J.R. had a statutory right *1225 to be sentenced within forty-five days of adjudication pursuant to sections 19-2-804(3) and 19-2-906(3)(a), he was entitled to eighty-eight days of presentence confinement credit. We are compelled to this conclusion because, were we to hold otherwise, the aggregate length of J.R.'s post-trial confinement would exceed the maximum period authorized by statute. See People v. Pate, 878 P.2d 685, 694 (Colo.1994) (sentences imposed by the judiciary must fall within the limits determined by the General Assembly).
Nevertheless, we reject J.R.'s suggestion that he is also entitled to presentence confinement credit running from the date he was transferred to county jail, January 28, 2008. In People v. T.O., 696 P.2d 811, 817 (Colo. 1985), on which J.R. here relies, the supreme court held that an eighteen-year-old who had been sentenced to county jail for a delinquent act he committed as a juvenile was statutorily eligible for good time credit because the General Assembly had not expressed an intent to exempt such offenders from the general good time statute. However, this holding has no application here because (1) J.R. does not claim that he has been confined in a county jail since the date he was sentenced; (2) our determination that the court acted within its discretion by denying J.R. credit for the time he was confined prior to the expiration of the forty-five-day deadline is not undermined by the fact that J.R. spent much of this time in county jail, as such confinement is specifically authorized by statute, see § 19-2-508(4)(f), C.R.S.2008 ("Any person who is eighteen years of age or older who is being detained for a delinquent act or criminal charge over which the juvenile court has jurisdiction shall be detained in the county jail in the same manner as if such person is charged as an adult."); and (3) our determination that J.R. is statutorily entitled to presentence confinement credit running from the date that the forty-five-day deadline expired obviates the need to determine whether the fact that he was confined in county jail during this same period might constitute an additional ground for recognizing such an entitlement.

III.
Finally, J.R. contends the trial court's denial of presentence confinement credit resulted in an unconstitutionally cruel and unusual punishment that violates his rights to equal protection and due process. However, he does not elaborate on these claims, other than to allege that the denial of presentence confinement credit "shocks the conscious [sic]."
Our determination that J.R. is entitled to presentence confinement credit running from the date that the forty-five-day deadline expired moots his constitutional claims with respect to that period, and our consciences are not shocked by the court's decision not to apply credit for the time J.R. spent in custody prior to the expiration of the forty-five-day deadline. See T.S.R., 843 P.2d at 107 (finding "nothing unfair or shocking to our conscience ... in the trial court's imposition of a two-year commitment" without presentence confinement credit for the 311 days that juvenile spent in preadjudicatory detention). Further, we decline to address the undeveloped aspects of J.R.'s constitutional arguments. See People v. Diefenderfer, 784 P.2d 741, 752 (Colo.1989) ("It is the duty of counsel for appealing parties to inform a reviewing court both as to the specific errors relied upon and as to the grounds, supporting facts and authorities therefor.").
*1226 The judgment is affirmed. The sentence is vacated, and the case is remanded for resentencing consistent with the views expressed in this opinion.
Chief Judge DAVIDSON and Judge STERNBERG[*] concur.
NOTES
[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S.2009.